# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | **Waive 30 Days** |
| | ) | |
| Shirley Bonner, *Respondent* | ) | Case No. 22-40091-169 |
| | ) | |
| Reverse Mortgage Funding LLC, by Celink, *Movant* | ) | Chapter: 13 |
| | ) | |
| vs. | ) | **MOTION FOR RELIEF FROM** |
| | ) | **STAY** |
| Shirley Bonner, *Respondent* | ) | |
| | ) | Filed By: Reverse Mortgage |
| and | ) | Funding LLC, by Celink |
| | ) | |
| Diana S. Daugherty, *Trustee* | ) | Hearing Date: December 19, |
| | ) | 2023 |
| | ) | Hearing Time: 10:00 AM |
| | ) | Hearing Location: 7 South |
| | ) | |
| | ) | Steven L. Crouch, #2903 |
| | ) | Daniel A. West, #98415 |
| | | Wendee Elliott-Clement #50311 |
| | | 13160 Foster, Suite 100 |
| | | Overland Park, KS 66213-2660 |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY COMBINED WITH NOTICE OF HEARING

**WARNING: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY DECEMBER 12, 2023.**

**YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. THE DATE IS SET OUT ABOVE. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**THE HEARING TO BE HELD ON THE DATE AND TIME ABOVE BEFORE THE HONORABLE Bonnie L. Clair, IN THE UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF MISSOURI, 111 SOUTH TENTH STREET, ST. LOUIS, MISSOURI, 63102, COURTROOM # 7 SOUTH.**

Reverse Mortgage Funding LLC, by Celink, its successors or assigns, ("Movant"), and in support of its motion, states as follows:

1. Movant files this motion under Rules 4001 and 9014, Rules of Bankruptcy Procedure. On January 13, 2022, the Debtor filed a Petition for Adjustment of Debts under Chapter 13 of the Bankruptcy Code wherein Movant was listed as a secured creditor as to real property of the Debtor.

2. Jurisdiction is invoked in the District Court under 28 U.S.C. §1334(a) and jurisdiction is proper in this Court pursuant to 28 U.S.C. §1408(1) and §157(b)(2)(G).

3. Shirley Bonner ("Respondent", whether one or more) resides at 3315 Oregon Avenue, Saint Louis, MO 63118.

4. Diana S. Daugherty is the Trustee duly appointed by law ("Trustee").

5. On November 21, 2006, the Respondent executed a promissory note (the "Note") in the principal sum of $210,000.00. The Note originated in the name of Frontier Financial Inc. dba Frontier Mortgage and was endorsed to James B. Nutter & Company then James B. Nutter & Company endorsed the Note to Reverse Mortgage Funding LLC. The A copy of the Note is attached as Exhibit "A".

6. Contemporaneously with the execution of the Note, a Deed of Trust was executed to secure repayment of the Note. The Deed of Trust was filed for record with the Office of the Recorder of Deeds of City of St. Louis County, MO, on December 11, 2006, in Book No. 12112006, at Page 0330. The Deed of Trust originated in the name of Frontier Financial Inc. dba Frontier Mortgage, and was assigned to James B. Nutter & Company, then assigned to Reverse Mortgage Funding LLC. A copy of the Deed of Trust is attached as Exhibit "B".

7. The Deed of Trust encumbers the property legally described as follows:

**Lot 34 of Cornet's Subdivision and in Black 1610 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 27 feet 6 inches to an alley 15 feet wide MORE CORRECTLY DESCRIBED AS Lot No. 34 of Cornet's Subdivision and in Block 1510 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 127 feet 6 inches to an alley 15 feet wide**, commonly known as 3315 Oregon Avenue, Saint Louis, Missouri 63118 (the "Property")

8. Movant is entitled to enforce the Note and Deed of Trust.

9. The Respondent has claimed the Property as exempt under 11 U.S.C. §522.

10. The total debt due on this loan as of October 31, 2023 is $156,591.10 an exact payoff is available upon request of an appropriate party.

11. The Plan provides that the pre-petition arrearage due on the Note would be paid to the Trustee and as this is a reverse mortgage, no post-petition payments would be paid to Movant.

12. Pursuant to Paragraph 7 of the Adjustable Rate Note (Home Equity Conversion):

7. IMMEDIATE PAYMENT IN FULL
(A) Death or Sale
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property, or (c) a life estate in the Property.

13. It is Creditor's understanding that the Respondent passed away on September 20, 2023, and was the sole Borrower on the Note, accordingly the full amount of the outstanding principal and accrued interest is now due.

14. It appears that the Respondent has one heir, Sharon N Bonner, who may have an interest in this property and therefore could be considered a non-filing Co-Debtor on the subject loan.

15. Accordingly, Movant request Relief from Stay, including any applicable Co-Debtor Stay, under 11 U.S.C. § 1301.

16. The Respondent has materially defaulted with respect to Movant's secured claim.

17. To remedy this, an Order for Relief from the Automatic Stay should be granted that is effective immediately without a stay of enforcement pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

18. Movant seeks relief for the purpose of exercising its remedies available under state law, up to and including foreclosure of its mortgage against Respondent's interest in the Property. Movant further seeks relief in order to contact the non-filing Co-Debtor, at its option, by telephone or by written

correspondence, to offer, provide and enter into a forbearance agreement, deed in lieu of foreclosure, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

19.     Movant specifically requests permission from this Honorable Court to communicate with the Respondent' counsel and the Co-Debtor to the extent necessary to comply with applicable nonbankruptcy law.

**WHEREFORE**, Movant, its successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. §362, including any applicable Co-Debtor Stay under 11 U.S.C. § 1301, to enforce its lien granted in the Deed of Trust and for such other and further relief, as the Court deems proper.

SOUTHLAW, P.C.

*/s/Wendee Elliott-Clement*

Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
13160 Foster, Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR CREDITOR**

# CERTIFICATE OF MAILING/SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on November 14, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via email by the Court's CM/ECF System as list on the Court's Electronic Mail Notice List.

- **Diana S. Daugherty**    standing_trustee@ch13stl.com, trust33@ch13stl.com
- **Susan L. Lissant**    edmoecf@dor.mo.gov
- **Office of US Trustee**    USTPRegion13.SL.ECF@USDOJ.gov
- **Timothy Patrick Powderly**    tim@powderlylaw.com, powderlylawmycmecf@gmail.com; info@andreyukbrazil.com; R51502@notify.bestcase.com

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on November 14, 2023.

The Estate of Shirley Bonner
3315 Oregon Avenue
Saint Louis, MO 63118
**RESPONDENT**

Sharon N Patterson
12766 Merribrook Dr
Florissant, MO 63033-5012
**CO DEBTOR**

SOUTHLAW, P.C.

_/s/Wendee Elliott-Clement_
Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
13160 Foster, Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR CREDITOR**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Shirley Bonner, *Debtor* | ) | |
| | ) | Case No. 22-40091-169 |
| Reverse Mortgage Funding LLC, by Celink, *Creditor* | ) | |
| | ) | Chapter: 13 |
| vs. | ) | |
| | ) | |
| Shirley Bonner, *Debtor* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Diana S. Daugherty, *Trustee* | ) | |

<u>SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE</u>

The following Exhibits referenced in the Attached Pleading filed on behalf of Reverse Mortgage Funding LLC, by Celink are available on request to the undersigned.

1. Exhibit A, the Note dated November 21, 2006, in the principal sum of $210,000.00

2. Exhibit B, the Deed of Trust for the Property that is the subject of the Pleading. The Deed of Trust was filed for record with the Office of the Register of Deeds of City of St. Louis County, Missouri, in December 11, 2006, in Book No. 12112006, at Page 0330. The property is legally described as:

   Lot 34 of Cornet's Subdivision and in Black 1610 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 27 feet 6 inches to an alley 15 feet wide MORE CORRECTLY DESCRIBED AS Lot No. 34 of Cornet's Subdivision and in Block 1510 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 127 feet 6 inches to an alley 15 feet wide, commonly known as 3315 Oregon Avenue, Saint Louis, MO 63118

3. Exhibit C, the assignment of the subject Deed of Trust.

SOUTHLAW, P.C.

_/s/Wendee Elliott-Clement_
_____
Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
13160 Foster, Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax

File No. 221915
Case No: 22-40091-169

moedbknotices@southlaw.com
**ATTORNEYS FOR CREDITOR**

## CERTIFICATE OF MAILING/SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on November 14, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via email by the Court's CM/ECF System as list on the Court's Electronic Mail Notice List.

- **Diana S. Daugherty**    standing_trustee@ch13stl.com, trust33@ch13stl.com
- **Susan L. Lissant**    edmoecf@dor.mo.gov
- **Office of US Trustee**    USTPRegion13.SL.ECF@USDOJ.gov
- **Timothy Patrick Powderly**    tim@powderlylaw.com, powderlylawmycmecf@gmail.com; info@andreyukbrazil.com; R51502@notify.bestcase.com

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on November 14, 2023.

The Estate of Shirley Bonner
3315 Oregon Avenue
Saint Louis, MO 63118
**RESPONDENT**

Sharon N Patterson
12766 Merribrook Dr
Florissant, MO 63033-5012
**CO DEBTOR**

SOUTHLAW, P.C.

_/s/Wendee Elliott-Clement_

Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608; KS#29961)
13160 Foster, Suite 100
OVERLAND PARK, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR CREDITOR**

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

**STATE OF MISSOURI**

**November 21, 2006**

**PROPERTY ADDRESS**

FHA Case Number ███████

3315 OREGON AVE.
ST. LOUIS, MISSOURI 63118
SAINT LOUIS CITY COUNTY



THIS IS A TRUE AND CERTIFIED COPY BY INTEGRITY LAND TITLE COMPANY

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means **Frontier Financial Inc. dba Frontier Mortgage** and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender up to a maximum principal amount of **Two Hundred Ten Thousand and 00/100 Dollars ($210,000.00)**, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **November 21, 2006** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **OCTOBER 19, 2092**. Interest will be charged on unpaid principal at the rate of **Six and 53/100 percent (6.530%)** per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at **12400 Olive Blvd., Suite 425**, St. Louis, Missouri 63141 or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest owed by Borrower at the time of assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on **JANUARY 1, 2007** and on __ that day of each succeeding year, or
_X_ the first day of each succeeding month. Change Date means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **1.50** percentage points to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date

Exhibit A

**(D) Limits on Interest Rate Changes**

___      **Annual:** The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

  X        **Monthly:** The interest rate will never increase above **16.530%**.

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

    (i)      A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii)      All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

    (i)      The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

    (ii)      For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii)      An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

### (B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)    This Note is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

### (C) Effect on Borrower

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)    Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____
SHIRLEY J BONNER (Borrower)

11/31/06
Date

ALLONGE

LOAN NUMBER: ████████████

FHA CASE NUMBER:

BORROWER(S): SHIRLEY J. BONNER

PROPERTY ADDRESS: 3315 OREGON AVE.
ST. LOUIS, MISSOURI 63118

NOTE/LOAN AMOUNT: $210,000.00

NOTE/LOAN DATE: November 21, 2006

*PAY TO THE ORDER OF:*
JAMES B. NUTTER & COMPANY

_____
WITHOUT RECOURSE

COMPANY NAME: Frontier Financial Inc. dba Frontier Mortgage
SIGNATURE: *Donna Tucker*
NAME: Donna Tucker
TITLE: Processor

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
JAMES B. NUTTER & COMPANY
BY _____
TRACEY ROWAN
ASST. SECRETARY

**ALLONGE FOR NOTE ENDORSEMENT**

BORROWERS:  SHIRLEY J. BONNER

LOAN AMOUNT: $210,000.00

DATE OF NOTE:  November 21, 2006

LOAN NUMBER ███████████

PROPERTY ADDRESS: 3315 OREGON AVENUE
                        SAINT LOUIS MO 63118-3005

PAY TO THE ORDER OF  **Reverse Mortgage Funding LLC**  WITHOUT RECOURSE,

Seller's Name  -  **James B. Nutter & Company**

BY _____

Beverly Malone, Vice President

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED ON
12/11/2006        03:16PM

SHARON QUIGLEY CARPENTER
RECORDER OF DEEDS

PAGES:  12
AMOUNT DUE:  $78.00
Clerk:
3622282390000 391312

**DATE:** November 21, 2006

**TYPE OF DOCUMENT:** Adjustable Rate Home Equity Conversion Deed of Trust
**GRANTOR(S):** Shirley J. Bonner
**GRANTEE(S):** Frontier Financial, Inc. dba Frontier Mortgage
**GRANTOR'S MAILING ADDRESS:** 3315 Oregon Ave., St. Louis, MO 63141
**GRANTEE'S MAILING:** 12400 Olive Blvd Ste 425, St. Louis, Mo 63141

**FULL LEGAL DESCRIPTION EXHIBIT A**

Integrity Land Title Co. Inc.
2601 Metro Blvd.
Maryland Heights, MO 63043
(314) 291-8102

Exhibit B

Requested by and returned to:
Frontier Financial Inc. dba Frontier Mortgage
12400 Olive Blvd., Suite 425
St. Louis, Missouri 63141

FHA Case Num█████████████

State of Missouri

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on November 21, 2006. The grantor is Shirley J. Bonner, an unmarried woman whose address is 3315 OREGON AVE., ST. LOUIS, MISSOURI 63118 ("Borrower"). The trustee is KENT D. LOHMANN, 12400 OLIVE BLVD.,, ST. LOUIS, MO 63141 ("Trustee"). The beneficiary is Frontier Financial Inc. dba Frontier Mortgage, which is organized and existing under the laws of Missouri, and whose address is 12400 Olive Blvd., Suite 425, St. Louis, Missouri 63141 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of US Two Hundred Ten Thousand and 00/100 Dollars ($210,000.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on OCTOBER 19, 2092. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in SAINT LOUIS CITY County, Missouri:

The real property located at the address 3315 OREGON AVE., ST. LOUIS, MISSOURI 63118, in the county of SAINT LOUIS CITY, state of MISSOURI, described more fully on Exhibit A attached to this Deed of Trust.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other

covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.      **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.      **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.      **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.      **Grounds for Acceleration of Debt.**
        (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

        (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:

        (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

        (c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the

Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13.     Relationship to Second Security Instrument.**

(a) **Second Security Instrument.**  In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.**  Payments made by the Secretary shall not be included in the debt under the Note unless:

     (i) This Security Instrument is assigned to the Secretary; or

     (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.**  Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

     (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

     (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.**  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14.     Forbearance by Lender Not a Waiver.**  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15.     Successors and Assigns Bound; Joint and Several Liability.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the

Secretary. Borrower's covenants and agreements shall be joint and several.

**16.     Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17.     Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18.     Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19.     Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20.     Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorney's fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may**

purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

21.    **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22.    **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of Six and 53/100 percent (6.530%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, ("Index") plus a margin. The Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15 (519). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on  **JANUARY 1, 2007,** and on the first day of ____ and on that day of each succeeding year, or __X__ the first day of each succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

____            **Annually Adjusting Variable Rate Feature** - The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

__X__            **Monthly Adjusting Variable Rate Feature** - The Calculated Interest Rate will never increase above 16.530%.

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Substitute Trustee.** Lender, at its option, may from time to time Remove trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**25. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check all riders that are applicable].

| | | | |
|---|---|---|---|
| | Condominium Rider | | PUD Rider |
| | Shared Appreciation Rider | | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signature _____

SHIRLEY J. BONNER (Borrower)

------------------[Space Below This Line for Acknowledgment]------------------

STATE OF MISSOURI          CITY OF ST LOUIS

On this _____21st_____ day of ___November___, before me personally appeared
Shirley J. Bonner, to me known to be the person(s) described in and who executed the foregoing instrument, and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the
_____CITY_____ and State aforesaid, the day and year first written above

My term expires: 3/3/10

_____
Holly J Laws            Notary Public

HOLLY J. LAWS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI - ST. LOUIS CITY
COMMISSION # 06503573
MY COMMISSION EXPIRES 3/3/2010

← A Single Person

## EXHIBIT A

Exhibit A to the Deed of Trust made on November 21, 2006, by Shirley J. Bonner, an unmarried woman ("Borrower") to KENT D. LOHMANN ("Trustee") for the benefit of Frontier Financial Inc. dba Frontier Mortgage ("Lender"). The Property is located in the county of SAINT LOUIS CITY, state of MISSOURI, described as follows:

Description of Property

Legal description attached hereto as Exhibit A and by this reference made a part hereof

Lot 34 of Cornet's Subdivision and in Block 1510 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 27 feet 6 inches to an alley 15 feet wide.

Exhibit A

BOOK                    PAGE
12112006-0331

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED ON
12/11/2006      03:16PM

SHARON QUIGLEY CARPENTER
RECORDER OF DEEDS

PAGES:  3
AMOUNT DUE:  $33.00

Clerk:

3622202390000  391312

**DATE:** November 21, 2006

②

**TYPE OF DOCUMENT:** CORPORATION Assignment of Deed of Trust
**GRANTOR(S):** Frontier Financial, Inc dba Frontier Mortgage
**GRANTEE(S):** James B. Nutter & Company
**GRANTOR'S MAILING ADDRESS:** 12400 Olive Blvd Ste 425, St. Louis, MO 63141
**GRANTEE'S MAILING:** 4153 Broadway, Kansas City, MO 64111

**FULL LEGAL DESCRIPTION** EXHIBIT A

*record of Even Date*

Integrity Land Title Co. Inc.
2601 Metro Blvd.
Maryland Heights, MO 63043
(314) 291-8102

Exhibit C

RECORDING REQUESTED BY
Frontier Financial Inc. dba Frontier Mortgage

AND WHEN RECORDED MAIL TO:
Frontier Financial Inc. dba Frontier Mortgage
12400 Olive Blvd., Suite 425
St. Louis, Missouri 63141

FHA C
Loan N
Title Order Number:
FHA Originator No:

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, sells, assigns and transfers to
JAMES B. NUTTER & COMPANY, whose address is 4153 BROADWAY, , KANSAS CITY, MISSOURI
64111-2169 all beneficial interest under that Certain Deed of Trust dated November 21, 2006 executed by Shirley J.

Bonner, an unmarried woman, Borrower, to Frontier Financial Inc. dba Frontier Mortgage, a Missouri Corporation,

Lender, and recorded concurrently herewith in the County Recorder's office of SAINT LOUIS CITY County,

MISSOURI, describing land therein as: Legal description attached hereto as Exhibit A and by this reference made a

part hereof              _record of Even Date_

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

Frontier Financial Inc. dba Frontier Mortgage
a Missouri Corporation

By: _Donna Tucker_
Title: _Processor_

STATE OF MISSOURI
COUNTY OF _St. Louis_                        ss:
On ____ 11/8/06 ____ before me, _C.M. Williams_
a Notary Public in and for said County and State, personally appeared _Donna Tucker_ personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted executed the
instrument.

WITNESS my hand and official seal                  Signature _C._

_____                  Notary Public _C.M. Williams_

C. M. WILLIAMS
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
ST. CHARLES COUNTY
MY COMMISSION EXPIRES:FEB. 23, 2007

Lot 34 of Cornet's Subdivision and in Block 1510 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 27 feet 6 inches to an alley 15 feet wide.

Exhibit A



BOOK       PAGE
**02252019-0078**

RECORDER OF DEEDS
CITY OF ST. LOUIS
RECORDED-CERTIFIED ON
**02/25/2019 11:55 AM**

**MICHAEL BUTLER**
**RECORDER OF DEEDS**

**PAGES: 2**
**AMOUNT DUE: 28.00**
**5052082**

Record and Return to:
Reverse Mortgage Funding LLC
700 Corporate Boulevard
Newburgh, New York 12550
Post Closing Dept.
Pin/ID/█████████

## ASSIGNMENT OF DEED OF TRUST

Phone: 1-888-679-6377

FOR VALUE RECEIVED, (Grantor) James B. Nutter & Company, having an address at: 4153 Broadway, Kansas City, MO 64111, does hereby assigns and transfers to (Grantee) Reverse Mortgage Funding LLC, beneficiary of the security instrument, its successors and assigns, whose address is **1455 Broad Street, Bloomfield NJ 07003**, all of its right, title and interest in the below described mortgage.

Certain **DEED OF TRUST** dated November 21, 2006 in the amount of $210,000.00 executed by SHIRLEY J. BONNER, an unmarried woman, whose property is 3315 OREGON AVE., ST. LOUIS, MO 63118, The trustee is KENT D. LOHMANN, 12400 OLIVE BLVD., ST. LOUIS, MO 63141 to FRONTIER FINANCIAL INC, dba FRONTIER MORTGAGE, 12400 OLIVE BLVD., SUITE 425, ST. LOUIS, MO 63141. Recorded on December 11, 2006 as Book 12112006, Page 0330 in SAINT LOUIS CITY County, State of MO.

AN ATTACHED EXHIBIT (legal description)

Prepared by: Foua C. Her, James B. Nutter & Company, 4153 Broadway, Kansas City, MO 64111, (816) 531-2345

IN WITNESS WHEREOF, the said Assignor, by the officer duly authorized, has executed the foregoing instrument on the 23rd day of January 2019.

JAMES B. NUTTER & COMPANY

Leah Valentine-Pack, Assistant Secretary

STATE OF MISSOURI
COUNTY OF JACKSON

On this 23rd day of January 2019, Corey Bolds, personally appeared Leah Valentine-Pack, Assistant Secretary for James B. Nutter & Company, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual or person upon behalf of which the individual acted, that he/she executed the instrument.

Corey Bolds Notary Public
My Commission Expires: Sept. 07, 2022

COREY BOLDS
Notary Public-Notary Seal
STATE OF MISSOURI
Commissioned for Jackson County
My Commission Expires: Sept 07, 2022
ID. #14014359

THIS UNCERTIFIED DOCUMENT IS LICENSED TO METRO... DUPLICATE BY ANY OTHER

EXHIBIT – Legal Description

3315 OREGON AVENUE
SAINT LOUIS MO 63118-3005

Lot 34 of Cornet's Subdivision and in Block 1510 of the City of St. Louis, fronting 25 feet on the West line of Oregon Avenue, by a depth Westwardly of 27 feet 6 inches to an alley 15 feet wide.

END OF DOCUMENT PAGES 1 THROUGH